IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| FERNANDO FABIAN ALVAREZ, §<br>    #56784-177, §<br>           MOVANT, §<br> §<br>v. §<br> §<br> §<br>UNITED STATES OF AMERICA, §<br>           RESPONDENT. § | <br><br><br><br>CIVIL CASE NO. 3:21-CV-3049-M-BK<br>(CRIMINAL CASE NO. 3:18-CR-45-M-1) |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Movant Fernando Fabian Alvarez's *pro se* motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 was referred to the undersigned United States magistrate judge for case management, including the issuance of findings and a recommended disposition where appropriate. As detailed here, the motion should be **DENIED**.

**I. BACKGROUND**

In 2018, Alvarez was named in a multi-count indictment charging him with conspiracy to commit carjacking, kidnapping, and robbery; kidnapping; two carjacking counts; two firearm counts under 18 U.S.C. § 924(c) related to the carjackings; and being an illegal alien in possession of a firearm. Crim. Doc. 22. In 2019, Alvarez pled guilty, pursuant to a plea agreement, to two counts—carjacking and brandishing a firearm in relation to a crime of violence. Crim. Doc. 34 at 1. In the Factual Resume, he stipulated to three more robberies as relevant conduct. Crim. Doc. 33 at 4. Alvarez was sentenced to a combined sentence of 360 months' imprisonment—180 months for carjacking and a consecutive 180-month term for

brandishing a firearm—and a three-year term of supervised release.  Crim. Doc. 53 at 2-3.[1]  He was also ordered to pay restitution in the amount of $79,840.  Crim. Doc. 53 at 5.

Alvarez's direct appeal was dismissed as frivolous.  *United States v. Alvarez*, 820 F. App'x 313 (5th Cir. 2020).  On December 7, 2021, he filed this timely § 2255 motion.  Doc. 1.  In it, he asserts ineffective assistance of trial and appellate counsel.  Doc. 1 at 4-15.  The Government opposes § 2255 relief, Doc. 6, and Alvarez has filed a reply, Doc. 7.

Upon review, the Court concludes that Alvarez fails to establish ineffective assistance of counsel.  His § 2255 motion should thus be denied.

## II. ANALYSIS

### A. Claims of Ineffective Assistance of Trial Counsel Fail

To succeed on an ineffective-assistance-of-counsel claim, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Failure to establish either deficient performance or prejudice defeats the claim.  *Id.* at 697.

To prove the deficient-performance prong of the *Strickland* test, the movant must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment.  *Id*. at 687.  The proper measure of attorney performance is reasonableness under prevailing professional norms.  *Id*. at 688.  That said, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.  There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  *Id.*

---

[1] All "Crim. Doc." citations refer to the related criminal case, *United States v. Alvarez*, No. 3:18-CR-045-M-1 (N.D. Tex. Sep. 20, 2019).

Moreover, to prove prejudice, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  To demonstrate prejudice in the context of a guilty plea, the movant must show that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  The movant bears the burden of proving that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*  And to prove prejudice in the sentencing context, the movant must show that the sentence was increased by the deficient performance of defense counsel.  *Glover v. United States*, 531 U.S. 198, 200, 203-04 (2001).

### 1. Failure to Correctly Estimate Sentencing Exposure (Ground 4)

Alvarez contends his defense counsel rendered ineffective assistance in misrepresenting his sentencing exposure on the firearm count.  Doc. 1 at 11; Doc. 2 at 15-16.  Alvarez asserts that before he pled guilty, defense counsel advised him that he faced a seven-year maximum sentence on the firearm count and an total sentence of 22 years on both the carjacking and firearm counts. Doc. 1 at 11; Doc. 2 at 15-16.  Alvarez maintains that counsel did not warn him that he faced a potential maximum sentence of life imprisonment on the firearm count.  Doc. 1 at 11; Doc. 2 at 16.  He also states that he would not have pleaded guilty and would have insisted on going to trial had counsel given him correct information about his sentencing exposure.  Doc. 7 at 7; Doc. 2 at 16.

Alvarez's sworn statements at rearraignment, however, contradict his current assertions that his plea was induced by misinformation about his sentencing exposure.  Alvarez confirmed under oath his understanding that by pleading guilty he would be subject to consecutive, maximum prison terms of 15 years for the carjacking offense and life for the firearm offense.

Crim. Doc. 71 at 11-13. Moreover, the Court thoroughly cautioned Alvarez that he could not rely on counsel's statements about the application of the advisory Sentencing Guidelines, since only the Court could determine the guideline range after considering the Presentence Report ("PSR") and any objections. Crim. Doc. 71 at 17-18. Alvarez also admitted that he understood that the Court could impose a sentence more severe than his advisory guideline range, and that, if that happened, he would not be permitted to withdraw his guilty plea. Crim. Doc. 71 at 18-19.

By his Plea Agreement—which he likewise confirmed under oath that he signed only after reading it carefully and discussing it with his counsel—Alvarez confirmed his understanding that (1) the Court would determine the sentence after considering the advisory Sentencing Guidelines, (2) no one, including his counsel, "can predict with certainty the outcome of the Court's consideration of the guidelines in this case," and (3) the Court, in its discretion, could sentence Alvarez up to the statutory maximum penalty. Crim. Doc. 71 at 14-15; Crim. Doc. 34 at 4. Further, Alvarez assured the Court that his plea was not induced by promises or assurances other than those contained in the Plea Agreement and Plea Agreement Supplement. Crim. Doc. 71 at 15. He also affirmed that he was satisfied with his counsel's advice and representation. Crim. Doc. 71 at 5-6.

Additionally, Alvarez had ample time—more than four months between rearraignment and his sentencing hearing—to advise the Court that he was dissatisfied with defense counsel's conduct and supposed misleading statements about his sentencing exposure, but he did not do so. Similarly at sentencing, he voiced no objection about the voluntariness of his guilty plea or his counsel's advice and allegedly deficient performance. Crim. Doc. 73. Indeed, when allowed to address the Court, *after* the Court notified the parties that it was considering an upward variance, Alvarez asked for mercy and apologized for his actions. Crim. Doc. 73 at 8-9. These

circumstances strongly suggest Alvarez's claims are driven by "buyer's remorse" rather than any defect in the guilty plea procedure.

Based on this record, Alvarez's self-serving and unsupported assertions that counsel misadvised him about his sentencing exposure are contradicted by his attestations in the written plea agreement and under oath at rearraignment.

Alvarez has also failed to demonstrate prejudice—that but for his counsel's allegedly erroneous advice, he would not have pleaded guilty and would have insisted on going to trial. *See Hill*, 474 U.S. at 59. He again presents only self-serving, *post hoc* assertions—not "contemporaneous evidence"—that he would not have pled guilty and would have gone to trial but for counsel's supposed explanations about his sentencing exposure. Alvarez's statements here are belied by the record, and are simply insufficient to contradict Alvarez's sworn testimony at rearraignment. *Lee v. United States*, ___ U.S. ___, 137 S. Ct. 1958, 1967 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."); *United States v. Crain*, 877 F.3d 637, 650 (5th Cir. 2017) (explaining that "self-serving post hoc assertions about how [the defendant] would have pled" do not negate the contemporaneous comments at the plea hearing).

Sworn statements made in open court are entitled to a strong presumption of truthfulness. *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Consequently, a defendant will not be permitted to contradict testimony given under oath at arraignment and sentencing. *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (requiring movant to produce "independent indicia of the likely merit of

[his] allegations" to overcome re-arraignment testimony and plea agreement, which refuted his allegations); *United States v. Guzman*, 2021 WL 2610124, at *3 (5th Cir. Oct. 6, 2021) (per curiam) (rejecting *post hoc* claim the defendant would have proceeded to trial but for counsel's alleged errors based on defendant's sworn statements at re-arraignment and sentencing).

For these reasons, Alvarez fails to demonstrate deficient performance or prejudice. His ineffective assistance claim therefore fails.

### 2. Failure to Seek Dismissal of Indictment Pre-Plea (Grounds 3 & 5)

Alvarez asserts that his defense counsel was ineffective in failing to seek dismissal of the superseding indictment because it was allegedly not returned in open court and Count 4 was duplicitous. Doc. 1 at 9-10. But his pre-guilty-plea claims are waived and meritless.

A guilty plea generally waives constitutional deprivations before the plea. A knowing and voluntary guilty plea also waives all non-jurisdictional defects that occurred before the plea. *United States v. Bell*, 966 F.2d 914, 915 (5th Cir. 1992) ("[B]y entering a plea of guilty, a defendant ordinarily waives all non-jurisdictional defects in the proceedings below."); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense . . . he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."). Such a waiver includes all claims of ineffective assistance of counsel "except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000); *see also Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) ("This [waiver] includes all claims of ineffective assistance of counsel *except* insofar as the alleged ineffectiveness relates to the voluntariness of the giving of the guilty plea." (cited cases omitted and emphasis in the original)).

Alvarez does not question that his guilty plea was knowing and voluntary. Moreover, alleged defects in an indictment are not jurisdictional. *See United States v. Cotton,* 535 U.S. 625, 630 (2002) ("[D]efects in an indictment do not deprive a court of its power to adjudicate a case."); *United States v. Cothran,* 302 F.3d 279, 283 (5th Cir. 2002) ("*Cotton* demonstrates that standard waiver principles apply to defects in the indictment."). Consequently, Alvarez's knowing and voluntary plea waived his pre-guilty plea claims, including his ineffective assistance claims for failing to seek dismissal of the superseding indictment. *See United States v. Smith*, 598 Fed. Appx. 219, 220 (5th Cir. 2014) ("The indictment's alleged defect . . . was not jurisdictional and any challenge to it is waived, if [Movant] entered a knowing and voluntary plea.").

Even if not waived, the record confirms the superseding indictment was signed by the grand jury foreperson and returned in open court on June 26, 2018, before Magistrate Judge Ramirez, who signed the return. Crim. Doc. 22 at 20. Because the indictment was properly returned, Alvarez's counsel cannot be considered ineffective for failing to make a meritless objection. *See United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000) (failure to raise a meritless objection is not ineffective assistance).[2]

Likewise, counsel was not ineffective for failing to raise an unfounded objection to Count 4. Alvarez maintains Count 4 is duplicitous because it charged both using, carrying and brandishing a firearm *and* possessing and brandishing the firearm in connection with a crime of

---

[2] In his reply, Alvarez noted that the superseding indictment did not appear on the publicly available docket sheet. Doc. 7 at 6, 15. A review of docket confirmed that the superseding indictment was sealed on August 2, 2018, at the request of the prosecutor, and was subsequently unsealed on February 2, 2023. Nothing about these events, however, changes the fact that the superseding indictment was properly returned in open court.

violence in violation of 18 U.S.C. § 924(c)(1)(A). Doc. 2 at 24-25; Doc. 7 at 8. But as the Government aptly notes, it merely alleges different ways to commit the same offense. Doc. 6 at 16 (citing note to Fifth Circuit Pattern Jury Instructions, No. 2.44A, (2019)). Additionally, Alvarez's reliance on the holding in *United States v. Ceballos-Torres*, 218 F.3d 409, 413 (5th Cir. 2000) is misplaced, as it relates to a different issue and Alvarez misquotes its language. Doc. 2 at 25; Doc. 7 at 8.

In sum, Alvarez's ineffective assistance claims alleged in grounds three and five lack merit.

### 3. Failure to Seek Continuance of Sentencing Hearing (Ground 1)

Alvarez alleges his counsel was ineffective in failing to request a continuance of the sentencing hearing after the Court notified the parties that it was considering an upward variance. Doc. 1 at 4; Crim. Doc. 73 at 4. He asserts that a continuance would have permitted counsel "to more adequately prepare to defend . . . why an upward variance was not necessary in this case." Doc. 1 at 4. Alvarez surmises counsel "could have conducted legal research and presented . . . how a sentence within the 'advisory' Guideline Range is reasonable[.]" Doc. 2 at 5. He also alleges that the Court's upward-variance announcement "caught the defense by surprise." Doc. 1 at 4; Doc. 2 at 2. In his unsworn reply, Alvarez adds for the first time that his counsel "whispered to [him] 'wow didn't see that coming the judge wants to impose a higher sentence on you' and it should be recognized that the PSR did not recommend a[n] 'upward variance' so there was no indication that this Court would consider an 'upward variance[.]'" Doc. 7 at 3, 10. Alverez's claim is unavailing.

Apart from his self-serving assertions, Alvarez proffers nothing in support of his contention that counsel was "surprised" about the possible upward variance in a case that

indisputably involved significant violent behavior. As reflected in the PSR, and as the Court eloquently articulated at sentencing, Alvarez "was running parallel lives . . . . A life as a vicious robber of people, using violence, and a family life." Crim. Doc. 73 at 5-6. Indeed, the PSR detailed Alvarez's "life of horror and violence" in significant detail, and the Court was "struck by the degree of terror and havoc that [he] reeked throughout our community." Doc. 2 at 1; Crim. Doc. 73 at 6, 22. The Court noted:

> the officer wrote [the PSR] in such a way that I could feel what was happening, and *I can just imagine the terror that people felt* when they thought you were law enforcement. I recall not only that you were pretending to be a police officer, in one of these -- at least one of these incidents you said you were a United States Marshal, and you held these people up. One guy's in the dumpster handcuffed . . . there's a child. These people were laying on their stomachs, not knowing whether they're going to see another day. *I mean it's just a horrible, horrible, horrible parade of extraordinary violence*; the kind of thing, frankly, that here in the ivory tower in federal court we don't see very much.

Crim. Doc. 73 at 9-10 (emphasis added).

Further, contrary to Alvarez's assertion, the PSR identified several aggravating factors that warranted the applicability of an upward departure or variance.

> [S]pecifically, there are five additional offenses that the defendant did not stipulate to in his Factual Resume and is not considered relevant conduct to the instant offense; therefore, this offense behavior was not taken into consideration in determining the applicable guideline range.
>
> * * *
>
> [D]uring the commission of the instant offense the defendant and his unknown coconspirators announced themselves as law enforcement and wore clothing that indicated they were law enforcement. The victims of the instant offense believed the defendant and his unknown coconspirators were law enforcement; therefore, they complied with their directives during the commission of the offenses. In addition, during the defendant's arrest for the instant offense a Plano Police Department patch and two shirts with "POLICE" were found during the search of the defendant's vehicle and residence.

Crim. Doc. 43-1 at 29-30 (PSR ¶¶ 141-144).

In determining the sentence, the Court fittingly observed:

I cannot erase for you or for your victims the horror that you perpetrated. I mean this stuff is . . . just bad . . . this is evil manifested . . . and you were at the far end of the spectrum in terms of the violence that you caused. And you didn't kill anybody. That's the only good thing I can say about it. It's pretty amazing that nobody died in this. It could have happened.

* * *

When I think about issues of the safety of our community, which is one of the factors here, the kind of horror that you perpetrated certainly made people feel less safe. And that is about the worst thing that you can do to somebody, other than kill them, is to make them realize that when they see a person wearing a uniform, that they might not actually be law enforcement but might be someone out to harm them.

Crim. Doc. 73 at 11-13. The Court then thanked defense counsel for the "tempered nature of [his] remarks," explaining, "[t]here really isn't anything that a lawyer, as good as [defense counsel] . . . can say to in any way justify what you did. It's unjustifiable." Crim. Doc. 73 at 13.

On this record, Alvarez plainly fails to establish either the deficient performance or prejudice. His assertions in the § 2255 motion and affidavit are largely conclusory. *See Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) (refusing as conclusory claim of ineffective assistance of counsel). Specifically, Alvarez has not demonstrated that a continuance would have benefitted his case, to-wit, that counsel could or would have submitted other evidence. Also, Alvarez's assertion that there is a reasonable probability he would have received a lower sentence rings hollow in light of the Court's compelling comments. Doc. 1 at 4.

Finally, Alvarez argument there was a "need to avoid unwarranted sentencing disparity," Doc. 2 at 5, likewise falls flat. He references other carjacking cases, but none involved the level of terror the Court determined that he inflicted. Doc. 2 at 5-6. Simply stated, nothing in the record suggests that the Court would have ruled differently. Thus, Alvarez cannot demonstrate

that counsel's alleged deficient performance resulted in a higher sentence. *See Glover*, 531 U.S. at 200, 203-04. His ineffective assistance claim therefore fails.

### 4. Magistrate Judge did not Labor under Conflict of Interest (Ground 2)

Next, Alvarez questions Magistrate Judge Horan's impartiality when he signed the arrest warrant, appointed counsel, and presided over his initial appearance and detention hearing. Doc. 1 at 6. He asserts points to Judge Horan's subsequent request, after a notice of appeal was filed, that a different magistrate judge be assigned (Crim. Doc. 58); claiming that such demonstrated that Judge Horan's "impartiality [was] reasonably questioned[.]" Doc. 1 at 6-7; Doc. 2 at 9, 11. Alvarez contends the claim is not procedurally defaulted because he is raising it in the context of appellate ineffective assistance. Doc. 7 at 5. That notwithstanding, his voluntary plea waived this pre-guilty plea claim as discussed above. And even if not waived, the claim is conclusory. Alvarez presents nothing to show that a conflict of interest even existed, or that Judge Horan had a legal obligation to recuse as a result. The record merely demonstrates that Judge Horan acted consistently with Special Order No. 3-143 (prophylactically providing for recusal "if a notice of appeal" or § 2255 motion is filed).[3]

### 5. Ineffective Assistance of Appellate Counsel likewise Fails (Ground 6)

Alvarez's related claim of ineffective assistance of appellate counsel—for failing to raise trial counsel's ineffective assistance and the alleged conflict-of-interest claim on appeal and filing an *Anders* brief instead—likewise fails. For reasons previously stated, Alvarez's claims are meritless. Because Alvarez identifies no nonfrivolous issue that could have been raised on appeal, he cannot show that counsel rendered constitutionally ineffective assistance in failing to

---

[3] The order is available at https://www.txnd.uscourts.gov/sites/default/files/orders/03-143_08-09-2019.pdf (last accessed on Feb. 2, 2023).

file a merits brief. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (when the petitioner asserts appellate counsel erroneously failed to file merits brief, he must show under *Strickland* that a reasonably competent attorney would have found that at least one of his claims presented a non-frivolous issue); *Newsome v. United States,* No. 3:13–CV–4954, 2015 WL 695595, *8 (N.D. Tex. Feb. 17, 2015) (finding that appellate counsel was not ineffective for filing an *Anders* brief when the movant identified no non-frivolous claims). Also, Alvarez was given the opportunity in the appellate court to raise whatever claims he desired. That he had no non-frivolous issue to raise on appeal is apparent in the appellate court's dismissal of his appeal as frivolous.

### III. EVIDENTIARY HEARING

Alvarez requests an evidentiary hearing to develop and resolve his claims. Doc. 1 at 24; Doc. 2 at 31. Even so, "[w]hen the files and records of a case make manifest the lack of merit of a Section 2255 [motion], the trial court is not required to hold an evidentiary hearing." *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981); *see also United States v. Reed*, 719 F.3d 369, 373-74 (5th Cir. 2013) ("A defendant is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'" (quoting *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008))). Because Alvarez's claims lack merit for reasons supported by the record, as previously noted, no evidentiary hearing is needed.

## IV. CONCLUSION

For all these reasons, Alvarez's § 2255 motion should be **DENIED**, and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on February 14, 2023.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).